IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **LEROY J. SPRINGIRTH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:06-01001** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on Plaintiff's Motion to Remand (Doc. No.

14.) and Defendant's Motion for Judgment on the Pleadings (Doc. No. 18.). Both parties have

consented in writing to a decision by the United States Magistrate Judge. (Doc. Nos. 3 and 4.)

The Plaintiff, Leroy J. Springirth (hereinafter referred to as "Claimant"), filed applications

for DIB and SSI on February 9, 2004 (protective filing date), alleging disability as of March 15,

2002, due to "bursitis in both shoulders, 4/5 vertebra lower back have a v shape, compressed

cartilage in both knees, hepatitis c, [and] arthritis near pelvis bone".[1] (Tr. at 16, 75, 76-78, 154.) The

---

[1] Claimant filed previous applications for DIB and SSI on March 29, 1999, and July 18,
2002. (Tr. at 16, 68-70, 71, 72-74.) The applications were denied on May 7, 1999, and June 3, 2003,
without further action or appeal. (Tr. at 16) Accordingly, the ALJ found that "these determinations
are res judicata regarding the periods through the date of the prior determinations on May 7, 1999
and June 3, 2003." (*Id.*)

claim was denied initially and upon reconsideration.[2] (Tr. at 41-43, 49-51.) On September 29, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 52.) The hearing was held on July 12, 2005, before the Honorable Brian P. Kilbane. (Tr. at 567-93.) By decision dated November 21, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 16-30.) The ALJ's decision became the final decision of the Commissioner on September 27, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 9-11.) On November 27, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix

---

[2] In Claimant's Request for Reconsideration, he alleged that he further was disabled due to pain in his chest, back, knees, shoulder, and left hip, as well as depression and anxiety. (Tr. at 49, 142, 152.)

2

1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and

3

available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are

---

[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the

rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R.

§§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe

mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

Regulation further specifies how the findings and conclusion reached in applying the technique must

be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written
> decision issued by the administrative law judge and the Appeals Council must
> incorporate the pertinent findings and conclusions based on the technique. The
> decision must show the significant history, including examination and laboratory
> findings, and the functional limitations that were considered in reaching a conclusion
> about the severity of the mental impairment(s). The decision must include a specific
> finding as to the degree of limitation in each of the functional areas described in
> paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because

he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) Under the

second inquiry, the ALJ found that Claimant suffered from a spinal disc disorder, hepatitis C with

residuals from treatment, and borderline intellectual functioning, which were severe impairments.

(Tr. at 16 and 24.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet

---

psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease
process resulting in such marginal adjustment that a minimal increase in mental demands or change
in the environment would cause decompensation; or (3) a current history of 1 or more years'
inability to function outside a highly supportive living arrangement, and the indication of a
continued need for such an arrangement.

or equal the level of severity of any listing in Appendix 1. (Tr. at 25-26.) The ALJ then found that

Claimant had a residual functional capacity for work at the light level of exertion, with the following

limitations:

> [C]laimant has the residual functional capacity to lift up to twenty pounds
> occasionally and ten pounds frequently. He can stand and/or walk six hours in an
> eight-hour workday, and sit about six hours in an eight-hour workday, but requires
> a sit/stand option. He can push and/or pull including operation of hand and/or foot
> controls, and occasionally perform postural activities including climbing, balancing,
> stooping, kneeling, crouching, and crawling, and should avoid working in vibrations,
> temperature extremes, or hazards including heights and moving machinery.
> Additionally, he is also limited to performing simple, unskilled work due to
> borderline intellectual functioning.

(Tr. at 26.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr.

at 28.)  On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing,

the ALJ concluded that Claimant could perform jobs such as an assembler, inspector, and a silver

wrapper, at the light level of exertion. (Tr. at 29-30.) On this basis, benefits were denied. (Tr. at 29-

30.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was

defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the

Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 11, 1957, and was 44 years old at the time of the administrative hearing. (Tr. at 28, 76.) Claimant had a high school education. (Tr. at 29, 154.) In the past, he worked as a security guard, fast food restaurant cook, landscape laborer, dishwasher/kitchen helper, golf course laborer, stable helper, and construction laborer. (Tr. at 28, 155-56, 589.)

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant was capable of (1) performing the jobs identified by the VE because he was intellectually functioning in the lowest ten percent of the population, and (2) working as a silver wrapper as that job required him to work around food preparation, despite his Hepatitis C. (Doc. No. 15 at 2-5.) The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision. (Doc. No. 18 at 13-17.)

Analysis.

**1. Intellectual Functioning.**

Claimant alleges that Claimant's IQ scores demonstrate that he is intellectually functioning in the lowest ten percent of the population, and therefore, is incapable of performing the jobs identified by the ALJ and VE. (Doc. No. 15 at 3-5.) Claimant reasons that the jobs of silver wrapper, inspector, and assembler all require a "general learning ability" level that exceeds the bottom ten percent of the population. (Id.) Claimant attaches to his Brief in Support of Complaint a document identified as "Table C.4 Percentile Ranks, Descriptive Categories, Normal Curve Equivalents, and Stanines." (Doc. No. 15 at Exhibit A.) This table indicates that Claimant's verbal IQ score of 74 and full scale IQ of 80 are below average and well below average, and fall within the bottom ten percent of the population identified on the table. (Id.) Claimant further asserts that the VE failed to discuss whether his findings conflicted with the requirements of the jobs as stated in the Department of Labor's Dictionary of Occupational Titles ("DOT"). (Id. at 5.)

The Commissioner asserts that though Claimant argues that the ten percent of the population with the lowest IQ scores is *per se* disabled within the meaning of the Social Security Act, he cites no proposition in the Act or in the Regulations. (Doc. No. 18 at 13-14.) Moreover, Claimant's table, submitted as Exhibit A "is from an unidentified source." (Id. at 14.) The Commissioner contends that Claimant's Exhibit A does not satisfy the criteria for considering new and material evidence under Borders. (Id.) The Commissioner further asserts that though the VE "did not generally state whether his testimony was consistent or inconsistent with the DOT, he did specifically note where testimony he gave was not addressed in the DOT, thereby reasonably indicating that any inconsistency between his testimony and the DOT would have been noted by him." (Doc. No. 18

at 16.)

Under the fourth sentence of 42 U.S.C. § 405(g), the court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, the court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

To justify a remand to consider newly submitted medical evidence, the evidence must meet the requirements of 42 U.S.C. § 405(g) and Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985).[5] In Borders, the Fourth Circuit held that newly discovered evidence may warrant a remand to the

---

[5] Within relevant case law, there is some disagreement as to whether 42 U.S.C. § 405(g) or the opinion in *Borders* provides the proper test in this circuit for remand of cases involving new evidence.  This court will apply the standard set forth in Borders in accordance with the reasoning previously expressed in this district:

> The court in *Wilkins v. Secretary of Dep't of Health & Human Servs.*, 925 F.2d 769 (4th Cir. 1991), suggested that the more stringent  Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that *Borders'* construction of §  405(g) is incorrect.  Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent *Borders* inquiry.

*Brock v. Secretary, Health and Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D. W.Va. 1992) (citations omitted).

9

Commissioner if four prerequisites are met:  (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; (2) the evidence is material to the extent that the Commissioner's decision "might reasonably have been different" had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court "at least a general showing of the nature" of the newly discovered evidence.  Id.

With regard to the new evidence submitted, the Claimant has not satisfied all four factors of Borders, and therefore, remand is inappropriate. Specifically, the Court finds that the evidence is unidentified, though it appears to be a table from an academic achievement test manual. Without determining whether the table satisfies the fourth factor of Borders, the Court proceeds to consider the remaining factors.

Regarding the first and second factors of Borders, the Court finds that the new evidence is neither relevant nor material. The medical record reveals that Claimant was treated at the Veterans Administration Medical Centers ("VAMC") for his mental conditions. He was examined on June 12, 1998, at which time he reported that he had been in three Veteran Administration Medical Centers, in the psychiatric wards, since 1995. (Tr. at 244.) He last was hospitalized in 1996. (Id.) He was referred to Seneca Health Center, where he was given Sertraline, which made him feel better and not that depressed. (Id.) Claimant reported that without the medication, he was very depressed, sad, down and blue, experienced problems with appetite and sleep, and had anxiety problems from time to time. (Id.) Dr. Ramesh C. Shah, M.D., diagnosed major depression, recurrent; anxiety

disorder NOS; rule out personality disorder, NOS, mild; and a GAF of 65.[6] (Tr. at 243.) On August 28, 1998, Claimant was doing well and reported that he was not that depressed or nervous. (Tr. at 241.)

Claimant was again examined by Dr. Shah on June 20, 2002, at which time he reported that he was involved in divorce proceedings and that since separating from his wife he had felt better and was not depressed or anxious. (Tr. at 235.) He denied mood swings and anger control problems, as well as the use of alcohol or street drugs. (Id.) On exam, Dr. Shah observed that Claimant looked a bit anxious but was not that depressed. (Id.) Claimant denied any psychotic symptoms, his memory was intact, and his judgment and insight were good. (Id.) Dr. Shah therefore diagnosed major depression, recurrent, mild, in remission; generalized anxiety disorder, in remission; intermittent explosive disorder, mild, in remission; and a GAF of 70. (Id.) Claimant reported that he had stopped taking all his medications refused to take Citalopram as recommended by Dr. Shah. (Id.)

On October 28, 2003, Claimant called the VAMC and complained of depression that resumed several weeks ago which interfered with his ability to function or work. (Tr. at 232.) Claimant noted a history of suicide attempts, though at the time, denied any suicidal or homicidal thoughts or delusional thoughts. (Id.) He further reported a loss of appetite. (Id.) Claimant was advised to seek medical care the following day. (Id.) On October 29, 2003, Richard Janney, PA-C,

---

[6] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

assessed Claimant's GAF of 55.[7] (Tr. at 470.) Claimant reported on August 11, 2004, that he was

a bit stressed out, nervous, and anxious. (Tr. at 434.) On mental status exam he presented with a

euthymic mood, full and bright affect, good eye contact, was cooperative, and had clear, relevant,

goal-directed, logical, coherent, and spontaneous speech. (Id.) Claimant reported no delusions or

suicidal or homicidal ideation. (Id.) Mr. Janney and Dr. Charles Lye, M.D., determined that his

recent, remote, and immediate memory was intact. (Id.) Claimant was assessed with depression,

recurrent; anxiety disorder, mild; and a GAF of 70. (Id.)

        Claimant underwent a psychological evaluation on May 6, 2004, by Judith F. Lucas, M.A.

(Tr. at 283-87.) On mental status exam Claimant exhibited no disturbance of mood and a broad

affect. (Tr. at 285.) There was no evidence of delusions or hallucinations, or suicidal or homicidal

ideation. (Id.) His thought process appeared logical and organized, his insight was fair, his

immediate memory was within normal limits, his remote memory was fair, and he exhibited no

excessive movement. (Id.) However, Claimant's judgment was moderately deficient; his recent

memory was severely deficient, as he was unable to recall any of four words after thirty minutes;

and his concentration was severely deficient, based on a Digit Span score of 5. (Id.)

        On the Weschler Adult Intelligence Scale, Third Edition, Claimant had a verbal IQ of 74,

performance IQ of 92, and a full scale IQ of 80. (Tr. at 285.) Ms. Lucas concluded that these scores

were valid as he was cooperative, put forth good effort, and exhibited good attention to the tasks.

(Tr. at 286.) The WRAT-3 revealed that Claimant read at a high school level and performed

---

        [7] A GAF of 51-60 indicates that the person has some moderate symptoms or "moderate
difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-
workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders
("DSM-IV") 32 (4th ed. 1994).

arithmetic at a fourth grade level. (Id.) Ms. Lucas again determined that these scores were valid as they were consistent with his ability. (Id.) Ms. Lucas therefore diagnosed Depressive Disorder NOS and Borderline Intellectual Functioning. (Id.) She summarized Claimant's activities of daily living[8] and opined that his ability to maintain social functioning and persistence were within normal limits but that his pace was mildly deficient. (Tr. at 286-87.)

Debra L. Lilly, Ph.D. completed a Psychiatric Review Technique form on May 21, 2004, in which she indicated that Claimant suffered from a depressive disorder and substance abuse disorders, in remission. (Tr. at 288-96.) Dr. Lilly opined that Claimant had no limitations in activities of daily living or social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. at 298.) In reaching these conclusions, Dr. Lilly noted that none of Claimant's treating sources noted cognitive deficits. (Tr. at 301.) She further noted that there were no limitations regarding concentration or memory and that the "results of memory [and] concentration assessment are not supported by obtained IQs." (Id.) Dr. Lilly stated that Claimant's "presentation was not that of a severely depressed individual. His mood was unremarkable, his affect was broad, and he often made jokes." (Id.)

Dr. Lilly also completed a form Mental Residual Functional Capacity Assessment, in which she opined that Claimant was moderately limited in his ability to understand, remember, and carry out detailed instructions; and maintain attention and concentration for extended periods. (Tr. at 302.)

---

[8] Claimant's reported activities of daily living included some cleaning, cooking, vacuuming, and loading the dishwasher. (Tr. at 286.) He indicated that he went fishing in his father's boat twice a year, but no longer hunted. (Id.) Claimant further reported that he went shopping, attempted to cut the grass, played with and cared for his son, and watched television. (Id.)

Nevertheless, she opined that Claimant retained "the ability to learn and perform simple, unskilled, work-like activities." (Tr. at 304.)

On August 27, 2004, H. Hoback Clark, M.D., completed a form Psychiatric Review Technique, in which she opined that there was insufficient evidence regarding Claimant's impairments and limitations because Claimant failed to return the functional information. (Tr. at 391-404.)

The ALJ summarized the mental health evidence of record and evaluated Claimant's mental impairments pursuant to the Regulations. At steps two and three of the special technique, the ALJ concluded that Claimant's borderline intellectual functioning was a severe impairment. (Tr. at 20-24.) He noted that Claimant had GAF scores of 70 in June, 2002, and June, 2004; that his depression was in remission because he was on medications; and that he reported that he felt better after his living conditions changed. (Tr. at 24.) Consequently, the ALJ concluded that Claimant's anxiety and depression were not severe impairments. (Id.) The ALJ determined that Claimant's borderline intellectual functioning imposed "no limitations in activities of daily living or social functioning, but mild limitations in concentration, persistence, and pace." (Id.) His borderline intellectual functioning had not resulted in any episodes of decompensation of extended duration. (Id.) Accordingly, the ALJ concluded that Claimant's borderline intellectual functioning restricted him to performing unskilled, short, simple instructions. (Tr. at 27.)

As the Commissioner emphasizes, Ms. Lucas did not find that Claimant was disabled based upon his IQ scores. Rather, she determined that he suffered from a depressive disorder and borderline intellectual functioning. She further determined however, that these conditions only mildly limited his ability to maintain pace. His abilities to perform activities of daily living and

maintain social functioning and persistence were within normal limits. While Ms. Lucas opined on mental status exam that Claimant's concentration was severely deficient, she did not rate the functional limitation resulting from his mental impairments. Furthermore, Dr. Lilly specifically noted Claimant's IQ scores and opined that the scores did not support his memory and concentration assessment. (Tr. at 300-01.) As the ALJ concluded, Dr. Lilly determined that Claimant was capable of learning and performing simple, unskilled work-like activities. (Tr. at 304.) This assessment was consistent with Dr. Lilly's assessment of moderate limitations regarding Claimant's ability to understand, remember, and carry out detailed instructions, and to maintain attention and concentration for extended periods of time. The Court further notes, as stated above, that Claimant's GAF on mental status evaluation was 65 in June, 2002; 55 in October, 2003; and 70 in July, 2004. His latter GAF of 70 is indicative of only mild symptoms. The Court therefore finds that the medical record, notwithstanding Claimant's IQ scores, does not support a finding of disability based on Claimant's mental impairments, particularly his borderline intellectual functioning. This finding, and the ALJ's decision, further is supported by Claimant's reported activities of daily living. As stated above, Claimant reported to Ms. Lucas that he was capable of performing household chores, fishing, shopping, and most importantly, caring for his son.

Addressing Claimant's alleged conflict between the VE and the DOT, the Court finds that Claimant has not demonstrated the existence of any conflict. The Commissioner concedes that the VE did not state whether his testimony generally was consistent with the DOT. However, the Commissioner points out that the VE specifically noted where testimony he gave was not addressed by the DOT. Particularly, the VE testified that the DOT does not mention a sit/stand option, but noted that the option is available in the national economy. (Tr. at 590-91.) The Commissioner asserts

that "[w]hile it may have been preferable for the VE to have included such a general statement [regarding consistency with the <u>DOT</u>], the record in this case shows that all of Plaintiff's limitations and specifically his mental limitations were addressed by the ALJ in the hypothetical examination of the VE." (Doc. No. 18 at 16.)

The Regulations provide that work exists in the national economy "when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(b) and 416.966(b) (2004). Although the regulations cite the <u>DOT</u> as one of several sources of which the Commissioner may take administrative notice in determining whether jobs exist in the national economy, the regulations do not *require* the Commissioner to identify jobs from the <u>DOT</u> that exist in the national economy in significant numbers. 20 C.F.R. §§ 404.1566(d)(1) and 416.966(d)(1) (2004); <u>Warf v. Shalala</u>, 844 F. Supp. 285, 290 (W.D. Va. 1994) ("The regulation does not indicate that the <u>DOT</u> is binding on the ALJ or that he is bound by the 'definitional requirements' for the various jobs.")  Indeed, the regulations state that "[i]f the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist." §§ 404.1566(e) and 416.966(e).

As to conflicts between the <u>DOT</u> and vocational expert testimony, in an unpublished opinion by the Fourth Circuit, the court, citing <u>Conn v. Secretary of Health & Human Serv.</u>, 51 F.3d 607, 610 (6th Cir. 1995), found that substantial evidence supported the ALJ's decision that the claimant could perform a significant number of jobs in the national economy, even when the <u>DOT</u> and vocational expert testimony were in conflict.  <u>Sawyer v. Apfel</u>, 166 F.3d 1210, 1210 (4th Cir. 1998).

16

The Court reasoned that the regulations do not require the Commissioner or the vocational expert to rely on classifications in the <u>DOT</u>. <u>Id.</u> Thus, even if this is an instance where the <u>DOT</u> and vocational testimony conflict, it does not merit remand.

Regarding the third <u>Borders</u> factor, the Court finds that Claimant has not demonstrated good cause for his failure to submit the evidence, the table, when his claim was before the Commissioner. Commissioner was represented by counsel, Eugene Pecora, at the administrative hearing, who as the Commissioner notes, did not object to the VE's qualifications or question the VE regarding the specific jobs identified. Furthermore, in the instant action, Claimant has not objected to the assessment of Dr. Lilly, which encompasses the limitations set forth by the ALJ regarding his borderline intellectual functioning, namely that he is limited to performing unskilled work, with short and simple instructions.

In view of the foregoing, the Court finds under the first and second factors of the <u>Borders</u> analysis that the evidence is neither relevant nor material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him. The Court further finds under the third <u>Borders</u> factor that Claimant has not demonstrated good cause as to why the evidence was not presented to the Commissioner. Accordingly, remand to consider the additional evidence is not warranted because the additional evidence is neither new or material, nor conflicts, contradicts, or calls into doubt the ALJ's decision.

**2. <u>Silver Wrapper</u>.**

Claimant further alleges that the ALJ erred in finding that he was capable of working as a silver wrapper, which required him to be around food preparation, despite his hepatitis C. (Doc. No. 15 at 4 n 6.) Claimant asserts that such "employment requires one to be around food preparation

17

which is hardly likely for health reasons, for someone who has hepatitis C like Mr. Springirth." (Id.) The Commissioner asserts that "[a]n individual who wraps place settings in napkins or plastic bags is not involved in food preparation and counsel, most respectfully, is neither a physician nor a vocational expert." (Doc. No. 18 at 13.) Moreover, the Commissioner asserts that the VE and ALJ identified the jobs of assembler and inspector as jobs that Claimant could perform in addition to the silver wrapper. (Id.)

The Court finds persuasive the Commissioner's arguments. Without addressing the propriety of Claimant working as a silver wrapper due to his hepatitis C, the Court finds that the ALJ identified two other jobs, that of an assembler and inspector, which Claimant could perform. Accordingly, Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion to Remand (Doc. No. 14.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. No. 18.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: March 28, 2008.

R. Clarke VanDervort
United States Magistrate Judge